And we'll hear first from Ms. Loughran, may it please the court, Alice Loughran for Petitioner of Fairfield Southern Company. Fairfield challenges on three independent grounds. The federal agency's ruling that the claimant here was employed for 15 years in one or more underground coal mines and thus was entitled to benefits. First, the claimant never worked in an underground coal mine. He worked above ground. Second, part of the time that was necessary for the 15 years was at a preparation plant that was seven miles away from the closest underground coal mine. And last, the board erred in reversing factual findings made by the ALJ in determining the amount of qualifying time that he had at a coal mine, assuming that's the test. The Department of Labor addresses the first ground in its brief, but doesn't address the other two grounds. Fairfield respectfully submits that the court can decide the case on any of the three grounds, but we ask that you reverse and order that the ALJ's denial of benefits be reinstated and that the case that's been going on for decades be closed and that there's no more factual finding. The first ground that we raise is the statutory text and structure and purpose all mean what the plain language says. In an underground mine means exactly that, not above. So it seems like the problem with that, so the Tenth Circuit says the statutory definition of mine includes the surrounding structures and things like that. Correct. Correct. So you have, you would be creating a conflict.  Well, I mean, just to address the, I mean, the statutory definition of mine includes stuff that's not underground. So can't you work in an underground mine and not be in the underground portion of the underground mine? No. To be clear, we're talking about not a coal mine, which is 820, I think it was eight, which is the definition that the Tenth Circuit was relying. They were relying on section 802H2, which defines coal mine. What we're talking about here is in an underground coal mine. We're not talking about any coal mine. There's a specific subset. Okay.  Maybe I'm misunderstanding something. So this, so the statutory language is underground coal mine. Correct. And that's in section 921. Right. And the Tenth Circuit- But the definition of coal mine- Correct. Does apply to this section, or am I wrong about that? No. So, well, what we're talking about is an underground coal mine. Yeah, but I'm just, just so I, I just thought you said something different. The statutory definition of coal mine does apply to this section. You're not denying that. Well, I guess I'm just a little unsure about what the question is, because we're not talking about just any coal mine. We're talking about a specific subset. Right. So it's got three words. Yes. Underground coal mine. Correct, correct. But the statute defines coal mine. Correct. The statute defines coal mine, which is, you know, a much broader term than underground coal mine. If you look at the, if you're looking at the, you know, purpose of this, what Congress was trying to do is that there's a subset of people that are working underground and that are going to be exposed- Yeah, but so that's not what it says, though. It doesn't say working underground in a coal mine. It says working in an underground coal mine. Correct. It doesn't say at, at a coal mine. It says in an underground coal mine. Let me get at it in a different way, because I think my kind of natural reading would also say in a coal mine, in an underground coal mine means in it, right, underneath, under the ground. That's what I would naturally read. But the 10th Circuit also says, and this microphone is acting up a little bit, the 10th Circuit also points out that the same subsection, which applies to surface miners, provides for a miner's employment in a coal mine other than an underground mine. So as I think about in, I can see how you could be in an underground mine, but if the statute also says that you can be in a mine that's not underground, what do you make of that? Well, the concern that I have with the 10th Circuit opinion is that they're relying on the definition of coal mine, and that is a different part of the statute. It's... Well, you keep saying different part of the statute. Right. I'm just so confused by your... Explain what you mean by that. The definition of coal mine does apply to this part of the statute, right? Well, it does in the sense that there's, as we talked about, so it's three words instead of two words. Okay. So you have a coal mine, but here we're talking about a subset that's underground. Yeah. So, so we would say underground... Right. ...coal mine and replace the two words coal mine with the definition from the definition section, right? Correct.   So that definition of coal mine says buildings, yada, yada, yada, right? Correct. Okay. And then, but here we're talking about an underground coal mine, and we're talking about in an underground coal mine. So it's 802 versus 921, and Congress was trying to get a subset of... Okay, let me try it this way. If you treat office workers above ground the same as underground workers, you're getting rid of the comparability requirement in the statute. So you're eliminating what Congress said. There's two ways to get the presumption. One is to be in an underground coal mine, and the other way is to show comparable conditions. That is, in a coal mine and a... No, no, no. I'm sorry. So on the comparable conditions, isn't it in a coal mine other than an underground mine? Correct. Okay, so that goes back to Judge Grant's point. It says in a coal mine other than an underground mine. So you still have to work in a coal mine, right? But you have to prove that the conditions are the same as an underground coal mine. And if you treat office workers who are above ground as needing it because they're above ground at a coal mine, there's no comparability requirement. You've eliminated that. No, but the comparability requirement would be for in a coal mine other than an underground mine. So a surface mine. So a surface mine. Right. Isn't that what that phrase means? You're working in a coal mine. Well, I don't think that's the way the agency has interpreted it. Right. Well, how would you interpret it? In a coal mine other than an underground... No, I think that is the right way to interpret it. Okay. So you've got underground mines and surface mines, and for surface mines you require comparability. Comparability, right. Okay. How does that have anything to do with where the person's working, whether they're in a building or whether they're in like a, I don't know, they've got a pickaxe and whatever. So if you have somebody who's in an office building, under their interpretation, they automatically, because they're above ground, they automatically satisfy the in, you know, in the coal mine, in the underground coal mine. As I see the 10th Circuit opinion, so we have statutory language in 921, and you look at the plain language and you look at what this legislative history, you look at how the Supreme Court interpreted it to uphold the constitutionality of it, and that resolves the interpretation of it. The 10th Circuit went and looked at the, you know, at the definition of the coal mine rather than all the statutory analysis, which the court is required to do. I'm not concerned personally about the definition of the coal mine. What's potentially tripping me up is the fact that that definition, whether or not it applies and it, I mean, I think it does, but that's not the issue. The fact that that provision uses the word in to refer not only to someone who is working underground at an underground coal mine, but also in a coal mine that is not underground. That's what's tripping me up. Can you help me with that? Well, I think the in is by reference to the object, which is not in coal mine, it's in an underground coal mine. But does that mean that in an underground coal mine, if an underground coal mine obviously has operations also above ground, is the person still working in the underground coal mine if they have an above ground job? No. No. That's our situation. Go ahead. No, I think that that's the concern that we have, and that's, he, this employee was working above ground. So that's the situation that we're dealing with here. So then how is someone, to go to the second section where it says in a coal mine other than an underground mine, it uses in there too, so everybody's working on top of the ground, right? Yes. So who's working in the coal mine and who's working not in the coal mine? Well, but for the second one, it's sort of a different thing. You have to sort of meet the comparability requirement. Yeah, but I mean, are we going to interpret the word in differently, right next to each other in the same statute? Well, I mean, I think we've explained in our brief that it's sort of a false tension that they're trying to create, but it doesn't matter because what we're talking about is in the underground coal mine. So you should interpret it based on the object, and we explained in our reply brief when you're talking about a ranger working in the Yellowstone Park versus a National Park ranger working in the glazier. Maybe I can move you off the subject because you don't have a lot of time left. I agree. Appreciate it. So let's assume that he has 14 years there, and then there's this other period. Did you want to address the other period? Yes, yes, yes. So I think, and that's certainly in our briefs, we, right, so this is unlike the first ground where at least the agency has some, you know, prior interpretations, and they have the Tenth Circuit as well as the pre-Chevron cases. This is the first time the agency, to our knowledge, has ever held that a preparation plant seven miles away or some distance away qualifies as, you know, employment in an underground coal mine. And there's no court decision out there or agency decision before this. So what's your best, along those lines, what's your best definition of appurtenant? Well, appurtenant isn't in the statute, right? To be clear, it's not in the statute. So they're using a non-statutory term to expand, you know, in an underground coal mine. Appurtenant comes into, you know, that's in the regulation, which was not a contemporary interpretation. It came in later. But it's a non-statutory term. What you... You're not asking us to overlook the regulation, are you? No, no. We're saying, okay, so you're right. So we're not asking that you overturn or sort of, you know, overrule or, you know, knock out the regulation. We're saying the way the regulation has been interpreted is wrong. That the word appurtenant is, you know, it's... The appurtenant is anything on or above the coal mine. It's not something that's, as they say, is connected, you know, through some type of, you know, either a road or it could be, in this case, you know, the, I forget what they're called, but for delivering the coal seven miles away. I've got one more question, if Judge Rosenbaum doesn't mind. Sure. This is just a quick one. Make sure I understand the statute correctly. If this gentleman doesn't satisfy the 15 years, it's not that... I mean, set aside what's happened in this case. If a coal miner doesn't satisfy the 15 years for the presumption, it's not that they can't be covered. It's just that the presumption doesn't operate to shift the burden. Is that correct? Yes, that's correct. And that's what's at issue. And no one disputes that he was unable to meet sort of the, you know, the qualifying time or meet the qualifying terms for benefits without the presumption. So that's why everything turns on this presumption, because he tried twice and was unable to meet that. Got it. Thank you.  Thank you.  Thank you. You've reserved five minutes for rebuttal. We'll hear next from Mr. Jacobs. Thank you, Your Honor. May it please the Court. I'm John Jacobs, attorney for the late Billy Barr and the early Barr here to address the issues raised. As we've discussed, Mr. Barr was a coal miner for a number of years at both U.S. Steel and Fairfield Southern. All that time he spent as a transportation worker loading coal at the Concord Mine, delivering to the Concord plant, and then later when the Concord Mine was closed, U.S. Steel shifted their operations to a new mine and delivered melted coal from... We're familiar with the facts, I think. Can I ask you what you think is the difference between what differentiates a coal mine from an underground coal mine? And in your view, why is the word underground there? I think originally when the statute was created, it covered... It explicitly referred to underground coal mines by definition. It was expanded later to broaden out to surface mining. So I think originally it was intended to cover just underground coal mines specifically. That's why there was no delineation that statute was drafted, is my understanding, Your Honor. Well, does it... I mean, does that mean that the word underground is now irrelevant? No, I don't think it is. I think an underground coal mine, and it's referred to in the regulations, is where the overburden is not removed and the coal is extracted from the ground, as opposed to an aboveground mine where the overburden is removed and the coal is extracted. So why would someone have the same dust experience, we'll say, working above an underground coal mine? Why would that be different than if they worked kind of around an aboveground coal mine? Well, I think from a practical standpoint, Your Honor, coal dust is explosive. And so in underground coal mines, the mines have to keep it down. So they spray line dust to keep the dust down because it can explode. That's not a danger above ground where you have explosive coal dust. So I don't think in a lot of situations in aboveground coal mines, they don't necessarily take the effort to keep the dust suppressed because they don't have to. So doesn't it make sense, doesn't that context make it make sense to differentiate between work in, work that takes place underground versus work that takes place above ground? I think they've created a distinction for that, but I don't think that's a distinction that's made when someone's working at an underground coal mine. Why? Well, there's just a statutory construction of it. They have a broad definition, Congress created a broad definition of what is considered a coal mine. And the underground coal mine includes all the prep plant facilities, in this case, where Mr. Barr was working loading coal. Yeah, I mean, I think your argument is that the distinction in the statute is between types of coal mines and not between types of work that people do at the coal mines. That would be correct, Your Honor. Can I ask you to address the other issues in the case, which seemed to me problematic for you. Even if I grant you that this was an underground coal mine, that he was working at an underground coal mine, and that there's some, you know, structures and appurtenances, et cetera. I mean, am I right that the record says that he worked seven miles away from the actual mining site? I think that's correct. If you look at the maps, they show that there is a, they built a long belt from the prep site at the prior mining location to the known mine, but it's still connected, it's still a pertinent to, it's all steel, U.S. steel property, where these mines were built. It's just a choice that U.S. Steel made. So is that a fact, I guess, on these two issues, so there's that issue and then the issue that the ALJ ruled against you on about the 14 to 15 years, are these just fact issues that we should look at? Or is this, are these legal issues? How should we evaluate those two issues? I think they're legal issues because I believe it's a pertinent to the mine. I think it would be hard to create some sort of right line rule at some point that a prep plant is not part of the coal mine. I mean, then you're just going to create a situation where mines build some sort of prep plant some distance away from the slope where the coal comes out of the ground. But if seven miles isn't too far, what about, what about 50 miles? Would that be a pertinent if the same thing is happening at that particular location? That'd be an interesting situation, Your Honor. I don't think that's going to happen just from a practical standpoint. But I think that'd be a harder case to make, you know, frankly. I mean, doesn't your answer have to be yes? Because if the reason that it's a pertinent is because it is a necessary part of the coal processing process, I guess, right? Then what difference does it make if it's seven miles right on top, 100 miles, 1,000 miles? I mean, if it's a matter of distance, don't you lose? I guess my question is, how does distance affect whether it's a pertinent? Is a pertinent something other? Does the meaning of a pertinent have to do with something other than distance? Well, I think it has to be direct connection. I think seven miles is probably an outlier in most cases with these coal mines. But there are instances where companies operate prep plant facilities that are not connected to anything. They're just independent, standalone facilities. And those would obviously not be underground coal mines in those instances. I'm just trying to discern what your rule is. Your rule is it has to be connected. Is that your rule? I think there has to be some direct connection between the slope facility where the coal is belted out to the prep plant facility where it's processed. Okay, so what if there's, you know, what if it's 200 miles away and there's some kind of underground mine that's built and it's sent there because maybe the company has multiple multiple mines and it wants to send everything to one processing facility for efficiency? I think that'd be an interesting thought experiment. But I think that's possible. But I don't think that's the case here. Right, but we're trying to discern a rule, right? And so it's helpful to us if you tell us what you think the governing rule is. Other than, well, this one qualifies, but that one doesn't, or I'm not sure. So I'm trying to discern what is the qualifying. I think here, Your Honor, it not only is it belted from the slope to the processing plant, the prep plant, it is all on U.S. Steel property, the mine owner. They own this whole contiguous property. It's not like we're belting it 200 miles away across multiple entities and landowners. This is one continuous unit. So is your rule if the mining company owns the property contiguously, then it has to be a pertinent? I would think so, yes. We have a Google map that's in the record from the appellant. But it just shows where the coal comes out and where the miners go down. It doesn't show the bounds of the mine because by definition, it's an underground coal mine. These are massive entities that extend for miles. And so the fact that, you know, it's... Sorry, my time has expired. You can finish answering the question. But the fact that it's just not visible from above ground doesn't mean it's not pertinent to the mine. You just can't see it because it's by definition underground. That just seems like... I mean, you answered my question earlier that you think this is like a legal issue, but it seems like you're really saying it's a fact issue that just like it's a totality of the circumstances question that you have to answer separately in every case about whether something's a pertinent. That may be fair, Your Honor. All right. Thank you. Thank you. We'll hear next from Ms. Torres. Good morning and may it please the Court. My name is Amanda Torres. I represent the Director of the Office of Workers' Compensation Programs. Today, the Director requests that this Court reject employers' interpretation of Section 921c4. There are three reasons why this Court should agree with the Board that a miner's work in the surface areas of an underground coal mine is qualifying for purposes of the rebuttable presumption without a comparability analysis. Number one, the plain language of the statute. Number two, the legislative history of the act. And number three, the fact that all three circuits who have addressed the issue have agreed with the Board. Turning to the first point, the plain language of Section 921c4 divides between two types of coal mines, one or more underground coal mines and one or more coal mines other than an underground coal mine. This language makes no mention of a miner's position within that coal mine or a type of  miner. This is in keeping with the dictionary definition of the word in to mean within the bounds of and the statutory definition of a coal mine at 802h2 which describes the mine to include property upon, under, or above the surface of that mine. It's also in keeping with the fact that Congress used the preposition in multiple times to discuss work both in an underground coal mine and in a coal mine other than an underground coal mine. That means that the best reading of 921c4 is that a miner's work within the bounds of an underground coal mine including the property upon, under, or above the surface of the underground coal mine. Wouldn't it have said within the bounds of an underground coal mine rather than in an underground coal mine? Your point about the multiple uses of that preposition is well taken. You probably heard that's something that I've struggled with, but it doesn't seem to me to make linguistic sense to say working in an underground coal mine can mean something that other than being in that mine. Well, I would answer that twofold. First, the fact that Congress used the word in multiple times both in 921c and the presumptions at c1 and c2 and in the statutory definition of a miner. And I'd also turn the court's attention to the legislative history of the act. In 1969, a coal miner was one who worked in one or more underground coal mines. So at that time, only miners in an underground coal mine had access to benefits. The first implementing regulations just two years later in 1971 defined a miner and specifically stated that it included miners whether they worked above the surface of the underground coal mine or below the surface of the underground coal mine. And then a year later, Congress did amendments which included creating the presumption that we're talking about today. So Congress was aware that a miner in an underground coal mine at that time included those that were working in the surface areas of an underground coal mine and maintained the preposition in to refer to work both in an underground coal mine in a coal mine other than an underground coal mine. Can I turn your attention to, you know, we've got the first 14 years, which you are addressing at the moment, I think. Then there is additional time. Did you want to speak to that? Well, the director only participated in the briefing on the point of the statutory interpretation of 921c4 and declined to engage and participate with the remaining issues before the court. All right. So you don't want to offer any thoughts on the meaning of, on whether, on the meaning of appurtenant. Well, the director, in its briefing, specifically stated that it was only participating. I understand. I'm just confirming.  Well, if the court is asking whether the director has a position on the meaning of appurtenant. That's what I'm asking. Understood, Your Honor. The court agrees with the board that there are two key factors to consider when determining appurtenant. The board explained those as physical proximity and a functional relationship. And I think the employer agreed that the word of pertinence, and I think specifically, went back to the statutory definition of a minor, I'm sorry, of a coal mine, upon, under, above. And I don't think from the briefing at 4460, within the opening brief, that they're actually challenging the board's two-factor analysis, more so they're challenging the application of that analysis to the facts here. I know this court had quite a lot of interest in how far is too far. That's a fact finder's determination. And so, in this case, it would be for a fact finder to determine whether, when applying the physical proximity prong and the functional relationship prong, whether Concord PrEP plant is appurtenant to the Oak Grove coal mine. All the ALJ needed, though, was substantial evidence to support that, right? So, to me, it seems like maybe, even if there is a fair argument either way, that the board didn't necessarily have the authority to say that the ALJ was wrong on that. Do you disagree with that? I would disagree with that, because the ALJ only applied the physical proximity prong. It was, essentially, they applied a very quick bright-line rule about the five miles as the crow flies, seven miles of the conveyor belting system to be too far. And so, they didn't actually apply what the board details as being that two-factor analysis. And so, yes, the ALJ only needed to provide substantial evidence to support those findings, but didn't actually come to a finding for that second prong. Got it. Thank you. I'm sorry. So, the way you view this, and there are two sort of independent prongs, so proximity and functional relationship? Yes. Okay. So, you can have, so is that like a checklist where it has to be proximate physically and there has to be a functional relationship? Or it's like an or where it can either be like physically close to it or there can be a functional relationship? No. Like the board described, it seems to be more of a two-factor analysis where both need to be present, but they have to be weighed based on the facts of this case. So, for example, a fact finder in this case that was doing a fulsome analysis would need to determine whether on these facts, the 5 slash 7 miles satisfied the physical proximity prong, and then on the other side, whether there was a functional relationship that supported holding that the Concord PrEP plant was in fact pertinent to the Oak Grove underground coal mine. I've got a question for you about our, about the board's, the deference that we give the board's interpretation. Are you familiar with the case of William Brothers versus Pate? You may not be because I didn't see it in the briefs. Not off the top of my head, Your Honor. So in that case from 1987, this court said, it is settled law that the board is entitled to no deference from an appellate court with regard to the board's reading of regulations. The board is a quasi-judicial body which is empowered to resolve legal issues, but not to engage in overall administration through rulemaking. The PEPCO court made clear that the board is not a policymaking agency. To the extent the board adopts new interpretations of the statute as it has done here, this court can give plenty of review to the decisions of the board. Does that, is that in any tension with your understanding of the board's authority? Not at all. And just for clarification, regarding 921C4 or regarding the regulatory definition of an underground coal mine, I suppose my answer would be the same for both. Is that for both of them, the best reading is the reading that the board gave and it's the reading that the director is proposing today and that the Fourth, Sixth, and Tenth Circuits have also held as the correct reading, which is that a miner's work in the surface areas of an underground coal mine is work in an underground coal mine and that a pertinent requires consideration of two factors, physical proximity and a functional relationship. I see that my time is up. Thank you so much, Your Honors. And Ms. Loughran, you've got five minutes. Thank you very much. So we don't agree with the interpretation of in an underground coal mine, but we understand that the court may not want to create a conflict and the statutory analysis may be complicated. Let me be clear, for my part only, I don't really care about creating a conflict. I care about us getting it right. So why don't you tell us why, what you think is right, and then we'll sort it out. Well I think, again, I don't want to spend too much time on this because we have much, we have the arguments on the alternative arguments, but the statutory interpretation, which I don't think that the Tenth Circuit did. They didn't look at in an underground coal mine. As the court pointed out, as Your Honor pointed out, we're talking about, they're reading out the word underground. That has to have some meaning. And if you look at the purpose of the statute in the Surgeon General's testimony, that when you work 15 years underground, that marks the prevalence of the disease. If we were to adopt your reading of the statute, how would we ever resolve any of these cases? Because how would we determine whether someone who worked at an underground coal mine worked underground or not for 15 years? No, I think it's actually much easier than what we have now.  Because you're working. I mean, yeah, so someone says like, look, I worked in the same place for 35 years. You know, I drove a truck down into the coal mine and I got coal and then I drove it out. Does that person work underground? So the example was that they went, so you have to go in the underground mine. And the question is, did they go in the underground mine? So even if only 15 minutes a day he went underground, that's enough? Well, I think under their regulation, yes, it may be enough. That it doesn't matter how many times per day or per week, so long as once a day they go in an underground coal mine. That's the way the regular regulation has been done. We don't really, for purposes of this case, it doesn't matter. But the alternative grounds are certainly, you know, I think, which would probably be simpler for the panel to resolve on when you're talking about a new test that they adopted, which is dramatically expanding the presumption beyond, you know, which it ever has existed. You're talking about some physical or interconnected relationship that could be, as in this case, you know, the conveyor belts, it could be, you know, roads, who knows what it can be. But that's talking about downstream facilities. That's dramatically expanding beyond, you know, what Congress wanted, what employers anticipated as well as insurers, what their exposure would be for the presumption. The third ground, which we haven't talked about much, but is, you know, the Court is well aware of the statutory standard of review and that as a fact finder that is given deference and we argue here that they actually took ambiguous testimony to overrule the findings of the ALJs. And not only did they do that as to the time period, but also they suggested in a footnote that there may be further fact finding and I just wanted to address that because we have put that in our opening brief, in our reply brief, and nobody has sort of disputed that if the Court resolves this case on one of the three grounds, this case should end. This case has been going on for decades. There shouldn't be a remand for further fact finding because, you know, the ground that they used in their footnote, which was a fact finding ground, is the same flawed analysis that they used to overturn the ALJs findings as to the length of time at the Concord Coal Preparation Plant. And so therefore we ask that if the Court reverses on the second or third ground that it reinstate the ALJs findings and then make sure that this case doesn't go back and sort of for further fact finding. What's your response to the suggestion by your friend on the other side that a pertinence depends on two factors, both I think function and distance, and that the ALJ only considered distance so therefore the Board had the right to appropriately consider both of those factors? Well, I think part of the problem was that it was sort of a new test. Again, this is sort of an agency interpretation that comes out for the first time on appeal. But if you look at the ALJs findings, they are actually looking, yes, they emphasize distance, but they also talked about the relationship between these two facilities. So if you're talking about physical interconnection, you will see, and I think in the ALJs findings of fact, that they address both grounds. But it's sort of difficult because they decided this for, they started this new test for the first time on appeal and then made factual findings to address it. And that's just not the way it's to be done. But everybody knows that a pertinence is a fact-based determination. And here, you know, they relied on distance. There's no, even if they relied only on distance, there's no reason why that isn't a permissible interpretation or a permissible factual basis for finding that it's not in a pertinence. I mean, when you're talking seven miles away, you're talking about a downstream facility and you're talking about, you know, a preparation plant that's not, you know, that's seven miles away, that is quite a leap from what we've been seeing under prior agency precedent or court precedent. All right. Thank you very much. Thank you. Thank you, Your Honor. Thank you. Thank you. Thank you. Our next case this morning is...